IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00388-RPM-MEH

HABTE W. MESFIN,

    Plaintiff,

v.

FIVE STAR VENDING, INC., d/b/a The Markland Group, a Florida corporation,
MARK MILLER, a/k/a Kyle Young, a/k/a David Sandlofer, a/k/a Mike Sand, in his individual and official capacities,
PAMELA MILLER in her individual and official capacities, and
GENE PIERSON, in his individual and official capacities,

    Defendants.

---

## RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Pending before the Court is Plaintiff's Second Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) against Defendants Five Star Vending, Inc., Mark Miller, Pam Miller and Patricia Cecere [filed May 16, 2008; doc #48]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to this Court to conduct an evidentiary hearing and to submit proposed findings of fact and a recommendation for the disposition of the motion [doc #52].

    The Court held a hearing on June 30, 2008 at which the Plaintiff appeared, represented by counsel. Defendant Patricia Cecere also appeared via telephone, representing herself. No one appeared on behalf of the remaining Defendants. After some discussion regarding the identity of Ms. Cecere as a proper defendant in this case, Plaintiff agreed to dismiss Ms. Cecere voluntarily

pursuant to Fed. R. Civ. P. 41(a). *See* doc. #57.[1] Following the hearing and after this Court struck Plaintiff's Supplemental Submission to the Evidentiary Hearing, the Court ordered Plaintiff to submit a verified accounting of the payments made by Plaintiff to Defendant Five Star Vending, Inc. during the relevant time period. Plaintiff submitted a response to the Court's order on July 3, 2008. For the reasons stated herein, the Court recommends that the Motion be **granted in part and denied in part**.[2]

## FINDINGS OF FACT

1.      In or about January 2005, Plaintiff searched the internet for investment opportunities in the vending machine sales industry. Plaintiff learned that Five Star Vending, Inc. ("Five Star") provided such an opportunity, so he requested additional information from the company.

2.      After communicating with Mark Miller, owner of Five Star, and other employees of

---

[1] The hearing established that Plaintiff incorrectly named Ms. Cecere as a Defendant based solely on her name being spelled the same as a person who, documents showed, had some connection with the Defendants. It was apparent that Plaintiff's counsel simply used a telephone book for the same geographical region as the other Defendants to find a "Patricia Cecere" and, once located, sued her. Plaintiff continued the litigation against Ms. Cecere despite her submission in September 2007 of documentary evidence demonstrating that she had no connection whatsoever with any events in this case. *See* docket #26.

[2] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

the company, Plaintiff determined to purchase ten vending machines in November 2005. He executed a form "Purchase Agreement" for the machines on November 21, 2005 for a total purchase price of $21,988.12. The copy of the purchase agreement provided by Plaintiff lists Five Star Vending, Inc. as the vendor, but is not executed by Five Star; indeed, Plaintiff produced no alleged contractual documents signed by a representative of Five Star.

3. On November 23, 2005, Plaintiff arranged for a wire transfer of $5,000.00 to a company known as Site Selectors. Plaintiff wired another $5,000.00 to the same company on November 28, 2005.

4. Three of the ten purchased machines were delivered to locations in Colorado inferior to those originally selected by the Plaintiff, although Plaintiff consented to these locations. Plaintiff and Defendants could not agree on acceptable locations for delivery of two of the machines which were prepared to be delivered. The remaining five machines were not delivered.

5. In December 2005, a Five Star employee named Les Stam informed Plaintiff that dozens of vending machine locations were available at the Air Force Academy (AFA), and that seven of these locations could be used for the outstanding undelivered machines. Five Star informed Plaintiff of persons at the AFA with whom Plaintiff could confer to arrange set up and delivery of the machines.

6. On January 30, 2006, Plaintiff executed a Purchase Agreement for nine vending machines for a total purchase price of $42,395.00, and on the same day, executed another Purchase Agreement for six machines for a total purchase price of $23,715.00. Again, none of the copies of the purchase agreements provided by Plaintiff are executed by Five Star.

7. On January 30, 2006, Plaintiff requested a wire transfer of $1,500.00 to Five Star

Vending, Inc. The money was debited from Plaintiff's bank account on the same day.

8. On January 31, 2006, Plaintiff requested a wire transfer of $64,500.00 to Five Star Vending, Inc. The money was debited from Plaintiff's bank account on February 1, 2006.

9. On February 3, 2006, Plaintiff executed a Purchase Agreement for four vending machines for a total purchase price of $17,741.25. Once more, the copy of the purchase agreement provided by Plaintiff is not executed by Five Star.

10. On February 6, 2006, Plaintiff requested a wire transfer of $4,710.00 to Five Star Vending, Inc. The money was debited from Plaintiff's bank account on the same day.

11. On February 17, 2006, Plaintiff executed a Purchase Agreement for two vending machines for a total purchase price of $8,755.00. The copy of the purchase agreement provided by Plaintiff is not executed by Five Star.

12. On March 2, 2006, Plaintiff requested a wire transfer of $4,000.00 to Five Star Vending, Inc. There is no evidence indicating whether the money was debited from Plaintiff's bank account.

13. Over the course of the transactions from December 2005 through March 2006, Plaintiff had several communications by telephone and email with employees of Five Star, including Mark Miller, Les Stam and Michelle Hewitt-Black, regarding the purchase agreements and locations for purchased vending machines.

14. Sometime after February 2006, Plaintiff discovered that the information given by Les Stam regarding available locations at the AFA was false, and that certain contacts named by Mr. Stam at the AFA did not even exist.

15. Five Star failed to deliver any of the 21 vending machines Plaintiff purchased

between January 2006 and February 2006. Despite Plaintiff's numerous attempts to recover the money he paid toward the purchase of the machines, Five Star never responded.

## **LEGAL STANDARD**

Fed. R. Civ. P. 55 governs motions for default judgment. Rule 55(b)(2) provides that: "[t]he court may conduct hearings ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *see also Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("A default judgment is unassailable on the merits."); *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos,* 2008 WL 576245 (D. Colo. 2008) (*citing Black v. Lane,* 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983). In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Deery American Corp. v. Artco Equipment Sales, Inc.,* 2003 WL 437762 (D. Colo. 2007).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default

5

judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Limited Partnership v. Smith,* 141 F. Supp.2d 277, 281 (D. Conn. 2001). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Investment Assocs.,* 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

## **LEGAL ANALYSIS**

With the preceding legal standards in mind and before I consider whether damages are to be assessed in this case, I must address whether Plaintiff's has established jurisdiction, and whether his claims each state a legal basis for relief.

**I.    JURISDICTION**

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g.*, *Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202-03 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment). The court is empowered and required to determine any personal jurisdiction issue before considering a motion for default judgment. *Deville v. Wilson*, 208 Fed. Appx. 629, *2 (10th Cir. 2006) (because plaintiff failed to plead facts indicating the defendant had the requisite minimum contacts with the forum state, the district court had no personal jurisdiction over defendants); *see also Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment).

The plaintiff carries the burden of showing the propriety of the court's exercise of personal jurisdiction over a defendant. *Buckhannon v. Monarch Life Ins. Co.*, 46 F.3d 1150 (10th Cir. 1995) (unpublished). However, only the well pleaded facts of a plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Id.* Here, Plaintiff, a Colorado resident, established initial contact with Defendants, who reside in Florida, in early 2005; however, between November 2005 and February 2006, Plaintiff had numerous communications with Five Star's employees, and Five Star delivered three purchased vending machines to Plaintiff in Colorado. Therefore, I must establish whether these contacts establish personal jurisdiction over the Defendants in this matter.

A federal court sitting in diversity may only assert personal jurisdiction over a defendant if two criteria are met. "First, a federal district court may only exercise personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *United States v. Botefuhr,* 309 F.3d 1263, 1271 (10th Cir. 2002) (quoting Fed. R. Civ. P. 4(k)(1)(A)). Second, an exercise of personal jurisdiction under state law must comport with the Fourteenth Amendment's due process clause. *Id.* In Colorado, only one inquiry is necessary, as the Colorado long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1193 (Colo. 2005).

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate

7

being haled into court there." *TH Agric. & Nutrition, LLC v. Ace European Group, Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citation and quotation marks omitted). If the defendant has sufficient contacts, the court then proceeds to asking "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances. *Id.* (citation and some quotation marks omitted).

The "minimum contacts" test may be met in either of two ways. First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16 (1984). Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.").

A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum. *Burger King,* 471 U.S. at 473. However, "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* In a contract case, relevant factors for assessing minimum contacts include "prior negotiations and

contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479.

In the instant case, personal jurisdiction is a close question. Although Plaintiff cannot establish whether Defendants maintain offices, have bank accounts or other property, or are registered to do business in Colorado, taking Plaintiff's testimony and the allegations of the Complaint as true, employees at Five Star negotiated at least one purchase agreement with Plaintiff for vending machines, engaged in numerous telephone calls and email communications with Plaintiff over a four-month period, and delivered at least three purchased vending machines to Colorado. The Court finds these contacts sufficient to establish personal jurisdiction over Defendant Five Star Vending, Inc.

At the same time, Plaintiff testified that he may have had ten telephone and email communications with Five Star's owner, Mark Miller, and had no communication whatsoever with Miller's wife and alleged President of Five Star, Pam Miller. There is no evidence demonstrating that either Mr. or Mrs. Miller executed any agreements with Plaintiff, whether on behalf of themselves or Five Star, or in any other way purposefully directed activities to Plaintiff, a Colorado resident. Such evidence is insufficient under the prevailing law to establish personal jurisdiction over the individual defendants, Mark Miller and Pam Miller.

**II.      CLAIMS FOR RELIEF**

In his First Amended Complaint, Plaintiff brings claims of breach of express contract, fraudulent misrepresentation, unjust enrichment, promissory estoppel, civil conspiracy and piercing the corporate veil against all Defendants, including those at issue here, Five Star Vending, Inc.,

Mark Miller (Principal), Pamela Miller (Principal), and Patricia Cecere (President).[3] Because Plaintiff has voluntarily dismissed Defendant Cecere from the case and the Court has determined that Plaintiff has failed to establish personal jurisdiction against the other individual Defendants, I will analyze whether Plaintiff has stated claims for relief against Defendant Five Star Vending, Inc.

The Plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof. *See Weft, Inc.,* 630 F. Supp. at 1143. The Court may hear evidence to establish the truth of any allegation. Fed. R. Civ. P. 55(b)(2) (2008). Here, the Court heard evidence on all claims for relief.

### A. Breach of Express Contract

Plaintiff has not provided evidence of an express contract entered into by both Plaintiff and Five Star Vending, Inc. The Purchase Agreements provided by Plaintiff are executed by Plaintiff, but not by Five Star. Plaintiff represented at the hearing that he would rely on the document found in Exhibit 2 as the express contract allegedly breached by Defendants.[4] Thereafter, Plaintiff supplemented his briefing on the motion by providing a copy of an Installment Sales Contract and Security Agreement for the purchase of two vending machines signed and dated by the Plaintiff on January 4, 2006; this Agreement is not executed by Five Star.

For an enforceable contract to exist, there must be mutual assent to an exchange between competent parties, legal consideration, and sufficient certainty with respect to the subject matter and

---

[3]The claims are brought against a fifth defendant as well, Gene Pierson (Manager), but default has not been entered against him.

[4]Exhibit number 2 contains a two-page typed document that is undated, unaddressed and unsigned. The content of the document appears to respond to a request for information.

essential terms of the agreement. *See e.g. Denver Truck Exch. v. Perryman*, 134 Colo. 586, 592 307 P.2d 805, 810 (1957); *see also Industrial Prods. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997). Here, Plaintiff has failed to provide evidence of assent and sufficient certainty regarding the subject matter and essential terms of the agreement on the part of Five Star. Because Plaintiff has failed to establish the truth of his allegation that an express contract exists between Plaintiff and Five Star, Plaintiff cannot recover damages on his claim for breach of express contract. Therefore, this Court recommends that Plaintiff's first claim for relief be denied.

B.     Fraudulent Misrepresentation

Plaintiff alleges that Five Star made false representations of material fact with respect to the vending sites at the AFA, delivery of the vending machines, and the existence of fictitious Air Force officers. With respect to allegations of fraud, however, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiff's specific allegations from the First Amended Complaint are as follows:

18.     On or about December 2005 [sic], a sales representative, identifying himself as "Les" from Defendant Five Star, informed Plaintiff that dozens of vending machine locations at the United States Air Force Academy ("AFA") were available, and that seven of these AFA locations could be used for the unplaced and undelivered Initial Machines.

19.     Based upon the promises and representations of the Defendants concerning the AFA locations, Plaintiff placed five (5) additional purchase orders between January to February 2006, for a total of thirty-two (32) additional machines, including placement services totaling one hundred fourteen thousand five hundred ninety-four dollars and thirty-seven cents ($114,594.37).

21.     Plaintiff then conducted further investigation into the alleged arrangement the Defendants had with the AFA, and attempted to contact several named majors and/or captains at the AFA who allegedly had knowledge of Defendant Five Star.

22.     Plaintiff discovered during his investigation that all of the representations were totally false concerning the various Air force [sic] majors and captains who supposedly knew about the Five Star vending machine contracts. Plaintiff further discovered that the AFA majors and captains, such as Captain Albert Tomton and Major Warren Green, did not even exists as individuals at the AFA.

11

23. Defendants subsequently failed to deliver the remaining thirty-nine (39) vending machines owed Plaintiff.

For the Plaintiff to recover from Five Star on this theory, he must show (1) Five Star made a false representation of material fact, (2) Five Star knew the representation was false or was aware that it did not know whether the representation was false, (3) Five Star made the representation intending that the Plaintiff would rely on the representation, (4) the Plaintiff relied on the representation, (5) the Plaintiff's reliance was justified, and (6) Plaintiff's reliance caused him damages. *See Concord Realty Co. v. Continental Funding Corp.*, 776 P.2d 1114, 1117-18 (Colo. 1989); *see also Robert K. Schader, P.C. v. Etta Indus., Inc.*, 892 P.2d 363, 366 (Colo. App. 1994).

Taking Plaintiff's allegations as true, Plaintiff could not have justifiably relied on the false representations. According to the Complaint and his own testimony, Plaintiff was able to discover that the representations made by Five Star were false. "If the plaintiff has access to information that was equally available to both parties and would have led to discovery of the true facts, the plaintiff has no right to rely upon the misrepresentation." *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo. App. 2000). The Plaintiff could have, but did not, investigate the available locations at the AFA before purchasing the additional vending machines. *See id.* (finding no fraud based on the plaintiffs' access to the true facts and their failure to ask about the status of the property before purchasing it).

Plaintiff's allegations, taken as true, fail to state a claim upon which relief may be granted; therefore, this Court recommends that Plaintiff's second claim for relief be denied.

C. <u>Unjust Enrichment</u>

Unjust enrichment is a form of quasi-contract or contract implied in law that does not depend in any way upon a promise or privity between the parties. *DCB Constr. Co., Inc. v. Central City Dev.*

*Co.,* 965 P.2d 115, 119 (Colo. 1998). The test for recovery under an unjust enrichment theory requires a showing that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *Id.* at 119-20.

Plaintiff alleges in his Complaint that he paid Five Star Vending, Inc. a total of $84,760.00 toward the purchase price of 39 vending machines, but received only three machines. Plaintiff provided no documentary evidence attached to his complaint, to his motion or at the hearing to demonstrate that he made any payments to Five Star. However, upon this Court's order, Plaintiff provided evidence that he wired to Five Star payments of $1,500.00, $64,500.00, and $4,710.00[5] in January and February 2006. Taking as true Plaintiff's allegations that such payments were made toward the purchase price of vending machines that were never delivered to him, the Court finds that Plaintiff has stated a valid claim for unjust enrichment. Therefore, the Court recommends that Plaintiff's third claim for relief be granted.

D.  Promissory Estoppel

Plaintiff alleges that Five Star "made promises to the Plaintiff regarding the sale, shipment, and placement of vending machines" to induce Plaintiff to send them money. Plaintiff did not plead his claim for promissory estoppel in the alternative to his breach of express contract claim; therefore, at the hearing, the Court reminded Plaintiff that a claim for promissory estoppel is available as a remedy only in the absence of an otherwise enforceable contract between the parties. *See Pickell*

---

[5]Plaintiff also provided evidence that he requested a wire transfer for $4,000.00 to be paid to Five Star; however, there is no evidence that the funds were actually wired and/or debited from his bank account. In addition, Plaintiff provided evidence that he made two payments of $5,000.00 each to a company known as Site Selectors. However, there is no evidence linking Site Selectors to Five Star, and Site Selectors is not a party to this action.

13

*v. Arizona Components Co.*, 902 P.2d 392, 394-95 (Colo. App. 1994), *rev'd on other grounds*, 931 P.2d 1184 (Colo. 1997). Plaintiff's counsel acknowledged the law on this issue, and consequently withdrew Plaintiff's claim for promissory estoppel in favor of his breach of express contract claim. Therefore, the Court recommends that Plaintiff's fourth claim for relief be denied as moot.

    E.    <u>Civil Conspiracy</u>

For the Plaintiff to recover from the Five Star on his claim of civil conspiracy, he must prove that Five Star and at least one other person agreed by words or conduct to commit an unlawful act, and that Plaintiff suffered damages by Five Star's conduct. *See Nelson v. Elway*, 908 P.2d 102 (Colo. 1995). Plaintiff's allegations with respect to this claim are vague:

> 47. Upon information and belief, all Defendants agreed by words and conduct to accomplish a goal against the Plaintiff - namely the receipt of Plaintiff's funds through unlawful means.
>
> 48. Defendants performed one or more acts to accomplish this goal through unlawful means.
>
> 49. Defendants' acts caused and resulted in damages to Plaintiff in amounts to be determined by trial.

Doc. #37. The Plaintiff fails to identify or describe the Defendants' "words and conduct" or the "unlawful means" Defendants allegedly used to accomplish the goal of receiving Plaintiff's funds. In fact, at the hearing, Plaintiff's counsel acknowledged that since no discovery had taken place in this case, he had no additional information to offer in support of Plaintiff's claim. Although Plaintiff's well-pleaded factual allegations are deemed admitted by a defaulting defendant, conclusory allegations are not. Therefore, the Plaintiff has failed to state a claim upon which relief may be granted, and the Court recommends that Plaintiff's fifth claim for relief be denied.

    F.    <u>Piercing the Corporate Veil</u>

Here, Plaintiff asks the Court to find personal liability against the individual Defendants for

his breach of contract and fraud claims; however, the Court has determined that it has no personal jurisdiction over the individual Defendants in this case. Consequently, the Court recommends that Plaintiff's sixth claim for relief be denied.

Even had the Court found jurisdiction, Plaintiff's claim fails. In Colorado, piercing the corporate veil requires the court to first inquire into whether the corporate entity is the alter ego of the shareholder. Only then will actions ostensibly taken by the corporation be considered acts of the shareholder. An alter ego relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006) (citing *Krystkowiak v. W.O. Brisben Co., Inc.,* 90 P.3d 859, 867 n. 7 (Colo. 2004)).

In establishing whether such unity of interest exists as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes. *Leonard v. McMorris,* 63 P.3d 323, 330 (Colo. 2003) (citing *Newport Steel Corp. v. Thompson,* 757 F. Supp. 1152, 1156 (D. Colo. 1990)). These factors reflect the underlying principle that the court should only pierce when the corporate form has been abused.

The court's second inquiry is whether justice requires recognizing the substance of the

relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." *Contractors Heating & Supply Co. v. Scherb,* 163 Colo. 584, 588, 432 P.2d 237, 239 (1967). Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced.

Third, the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity. *Water, Waste & Land, Inc. v. Lanham,* 955 P.2d 997, 1004 (Colo. 1998). Achieving an equitable result is the paramount goal of traditional piercing of the corporate veil. A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met. *Contractors Heating & Supply Co.,* 163 Colo. at 588, 432 P.2d at 239.

Here, the Plaintiff alleges only that, "based upon information and belief," Mark Miller and Pamela Miller have held themselves out as owners and/or principals of Five Star Vending, Inc., and as such, should "be held personally accountable for all claims presented against the corporate Defendant, including but not limited to any breach of contract and fraudulent misrepresentation claim." Doc. #37 at 9. No additional information was provided at the hearing to allow the court to consider whether a corporate form has been abused. Plaintiff's allegations, standing alone, are insufficient to meet the requirements necessary to "pierce a corporate veil" in this matter. Therefore, the Court recommends that Plaintiff's sixth claim for relief be denied.

### III. DAMAGES

In his First Amended Complaint, Plaintiff seeks both economic and non-economic damages. Doc. #37 at 10. However, at the hearing, Plaintiff's counsel withdrew Plaintiff's claim for non-economic damages. Therefore, the Court will proceed to analyze Plaintiff's entitlement to economic

16

damages for the single theory of recovery - unjust enrichment - on which Plaintiff has succeeded.

The burden is on the plaintiff to establish entitlement to recovery of damages against a defaulting defendant. *See Clague v. Bednarski,* 105 F.R.D. 552 (E.D.N.Y. 1985). Damages must be established by proof, unless they are either susceptible of mathematical computation or liquidated as of the default. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted). A conclusory affidavit fails to establish a basis for the damages a plaintiff seeks. *Id.*

Here, Plaintiff testified that he has paid the Defendants $84,760.00 for the purchase of location services and approximately 39 vending machines. In support of his statement, Plaintiff has provided a four-page document, all pages of which list the same "Account Number," two pages of which list the time period, "November 11 through December 12, 2005," and the other two pages of which list the time period, "January 13 through February 10." The document is marked "Exhibit 1" and lists a series of transactions, with hand-written asterisks highlighting certain transactions. The document lists no name of the account holder, but Plaintiff has testified in an affidavit that the document lists "wire transfer receipts." Doc. #60-2 at ¶9.

Some highlighted transactions match copies of wire transfer requests also provided by Plaintiff in a document marked Exhibit 2. The wire transfer requests list Plaintiff's name as the customer and the same account number listed on the document marked Exhibit 1. Therefore, after a review of these documents, the Court finds that the transactions listed in Exhibit 1 are the actual debits from Plaintiff's account of the wire transfer requests listed in Exhibit 2.

Reviewing these documents together, the Court finds that Plaintiff has proven the following payments to Five Star: $1,500.00 on January 30, 2006, $64,550.00 on February 1, 2006, and

$4,710.00 on February 6, 2006, for a total of $70,760.00.[6] Plaintiff received no vending machines or services from Five Star as a result of these payments. Therefore, the Court recommends that the District Court find Plaintiff has suffered damages in the amount of $70,760.00 for the unjust enrichment of Defendant Five Star Vending, Inc.

V.    ATTORNEY'S FEES

Plaintiff seeks recovery of his attorney's fees in this matter. Doc. #37 at 10. However, none of the claims alleged in this action, including a claim for unjust enrichment, provide for the recovery of attorney's fees should the Plaintiff succeed on the claim. Moreover, Plaintiff has failed to plead that any defense of the claims would "lack substantial justification" as required by Colo. Rev. Stat. § 13-17-102(2) for the recovery of reasonable attorney's fees. *See Township Homeowners Ass'n v. Arapahoe Roofing & Sheet Metal Co.*, 844 P.2d 1316, 1318 (Colo. App. 1992). Therefore, Plaintiff may not be awarded attorney's fees under these circumstances.

### **CONCLUSION**

Based on the foregoing, and the entire record provided to the Court, I do hereby **recommend** that the District Court grant in part and deny in part the Plaintiff's Second Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) against Defendants Five Star Vending, Inc., Mark Miller, Pam Miller and Patricia Cecere [filed May 16, 2008; doc #48] as follows:

---

[6]Plaintiff also requests recovery for two payments of $5,000.00 made to "Site Selectors" in November 2005; however, Site Selectors is not a party to this action and Plaintiff has provided no evidence that Site Selectors is linked or related to Defendant Five Star Vending in any way. In addition, Plaintiff seeks recovery for a $4,000.00 payment to Five Star Vending in March 2006. While Plaintiff has provided a copy of a wire transfer request for this amount, he has provided no evidence that the funds were actually debited from his account. *See* Exhs 1 and 2.

In addition, Plaintiff testified that he received three vending machines in November 2005. This transaction apparently occurred after the $10,000.00 payment to Site Selectors, which is not considered in this damages analysis.

1. Deny the motion as to Defendants Mark Miller and Pamela Miller for this Court's lack of jurisdiction, and as to Defendant Cecere based on Plaintiff's agreement to withdraw any claims against her;

2. Grant the motion as to Plaintiff's third claim for relief for unjust enrichment against Defendant Five Star Vending, Inc. and award the Plaintiff $70,760.00 in economic damages;

3. Deny the motion as to Plaintiff's five other claims for relief;

4. Deny Plaintiff's request for attorney's fees; and

5. Award Plaintiff his costs based on the default judgment.

Dated at Denver, Colorado, this 17th day of July, 2008.

BY THE COURT:

s/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge